KTF:JRS
F. #2023R00145

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC, 1600 AMPHITHEATRE PARKWAY, MOUNTAIN VIEW, CALIFORNIA 94043 | **TO BE FILED UNDER SEAL**<br><br>**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**<br><br>Case No. 23-MC-1265 |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, THOMAS NUZIO, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information pertaining to the account identified as agshowbizness@gmail.com, further described in the following paragraphs and in Attachment A, that is stored at premises controlled by Google LLC ("Google"), which is headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043.  This affidavit is made in support of an application for a search warrant pursuant to 18 U.S.C. § 2703(c)(1)(A) to require Google to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.      I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been assigned to the Joint Robbery Task Force between ATF and the New York City Police Department ("NYPD") since June 2019.  I have been a law

enforcement officer since 2006.  As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing criminal laws and duly authorized by the Attorney General to request a search warrant.  In this capacity, I have participated in the investigation of numerous cases involving armed robberies and larcenies, including armed robberies and larcenies of businesses, and I have conducted physical and electronic surveillance, interviewed witnesses, participated in the execution of court-authorized search warrants, reviewed electronic evidence, including cell site records, and used other investigative techniques to obtain relevant information regarding these and other crimes.  As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement agents and witnesses.  This affidavit is intended to show merely that there is probable cause for the requested warrant and therefore does not set forth all of my knowledge about this matter.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of, among other laws, Title 18, United States Code, sections 2, 924(c), and 1951(a) (hereinafter, the "SUBJECT OFFENSES") have been committed and that the search of the information described in Attachment A will lead to evidence of these crimes, as further described in Attachment B.

2

PROBABLE CAUSE

5.     The United States, including the ATF and the NYPD, is conducting an investigation into the armed robbery of a news and tobacco shop (the "Store") located in Brooklyn, New York.  On February 10, 2023, at approximately 11:23 p.m., two male suspects entered the Store.  One suspect stole approximately $4,615.00 from the cash register while the other suspect pistol-whipped a customer multiple times before shooting the customer in the hip. The perpetrators then escaped in a vehicle driven by a third perpetrator.

The February 10, 2023 Armed Robbery and Shooting

6.     On February 10, 2023, at approximately 11:23 p.m., two men wearing face masks and dressed in hooded clothing—one in a blue hooded jacket and the other in what appears to be a black sweatshirt—entered the Store, which is located at 477 Myrtle Avenue in Brooklyn, New York and which engages in interstate commerce.  Video footage from security cameras located inside of the Store captured the two perpetrators as they entered the Store, as set forth in Figure 1 below.



**Figure 1**

7.     Upon entering the Store, the perpetrator wearing the blue hooded jacket (the "Robber") forced his way behind the counter.  While pointing a knife at the cashier, the Robber stole the cashier's wallet and grabbed approximately $4,615.00 in cash from the cash registers, as shown below in Figure 2.



**Figure 2**

8.     The perpetrator wearing what appears to be a black hooded sweatshirt (the "Shooter") rushed to the back of the Store, where the Store sells beverages in large, refrigerated coolers.  The Shooter immediately pointed a handgun at a customer (the "Victim") who was standing by the coolers using his cellphone, as seen below in Figure 3.



**Figure 3**

4

9.      The Shooter pistol-whipped the Victim across the face multiple times and then shot the Victim in the hip.  The Victim immediately collapsed onto the floor, wincing in pain.

10.     Approximately two minutes after entering, the Robber and the Shooter fled the Store.  The Victim was rushed by ambulance to Methodist Hospital for treatment for his significant injuries to his face and hip.

<u>Video Canvas</u>

11.     Law enforcement subsequently conducted a video canvas of the area surrounding the Store.  A surveillance camera located approximately one block north of the Store captured the Robber and the Shooter running from the Store in the minutes after the armed robbery.  They are seen in the footage entering a red-colored sedan (the "Getaway Vehicle") located underneath the Brooklyn-Queens Expressway that appears to have been driven by a third perpetrator (the "Getaway Driver").

12.     Additional surveillance recorded shortly before the armed robbery showed the Getaway Driver pacing in the vicinity of the Getaway Vehicle at the same time that the Robber and the Shooter made their way to the Store.  The Getaway Driver is wearing what appears to be a dark jacket, a blue hooded sweatshirt, and light-colored pants with writing down the leg.  A screenshot from the surveillance video showing the Getaway Driver pacing is set forth below in Figure 4.



**Figure 4**

13.     Law enforcement also determined through a license plate reader affixed to a private residence on Hall Street—which is perpendicular to Myrtle Avenue, where the Store is located—that a red Chevy Malibu with New York license plate number KYM2656 matching the description of the Getaway Vehicle on the surveillance footage drove down that street shortly before the armed robbery took place.  Accordingly, I believe that the red Chevy Malibu was the Getaway Vehicle.

14.     A review of law enforcement databases shows that the Getaway Vehicle is registered to an individual named Khaliaha Kates.

<u>MICHAEL RUTLEDGE</u>

15.     Based on my participation in this investigation, I believe that the Getaway Driver was Michael Rutledge, as set forth in more detail below.  Law enforcement records also show that on February 10, 2023 at approximately 7:28 p.m., approximately four hours before the armed robbery, NYPD officers had an encounter with the driver of the red Chevy Malibu in Manhattan.  The officers observed the driver urinating in public and the passenger smoking marijuana inside of the vehicle.  No arrests were made.

16.     The passenger provided the officers with what appears to be a fictitious name.   However, the driver of the vehicle identified himself to the responding officers as

MICHAEL RUTLEDGE.  Body worn camera footage of RUTLEDGE during this police

encounter is seen in Figure 5 below:



**Figure 5**

17.     In the excerpt of the body worn camera footage shown in Figure 5,

MICHAEL RUTLEDGE is wearing what appears to be the same blue hooded sweatshirt and

dark jacket as the Getaway Driver who was captured in the surveillance footage from the vicinity

of the armed robbery set forth in Figure 4:

   

**Figure 4**                              **Figure 5**

18.     While conducting physical surveillance in the days after the armed

robbery, law enforcement discovered the red Chevy Malibu parked in the Bronx.  Law

enforcement then conducted a video canvas of the area surrounding where the red Chevy Malibu

was found parked.  An individual who appears to be MICHAEL RUTLEDGE is seen on

7

surveillance at approximately 1:09 a.m. on February 11, 2023—approximately one and a half hours after the armed robbery—in the vicinity of East 149th Street and Concord Avenue in the Bronx.

19.     Specifically, as shown in Figure 6—which is an excerpt from the surveillance video in the vicinity of East 149th Street and Concord Avenue in the Bronx at approximately 1:09 a.m. on February 11, 2023—MICHAEL RUTLEDGE is seen wearing what appears to be the same dark jacket and blue hooded sweatshirt shown in Figure 4 and Figure 5, as well as the same white pants shown in Figure 4.



**Figure 6**

20.     Law enforcement conducted additional physical surveillance on February 17, 2023 of the Getaway Vehicle and observed the person who appears to be MICHAEL RUTLEDGE walk to the vehicle with a person who appears to be Khaliaha Kates, the registered owner of the vehicle.  Additional video surveillance reviewed by law enforcement also shows RUTLEDGE walking to the vehicle with Kates.

21.     Law enforcement has reviewed historical cell site data connected to MICHAEL RUTLEDGE's cell phone.[1]  RUTLEDGE submitted this phone number to the officer supervising his parole following his conviction for manslaughter in the first degree with intent to cause serious physical injury, in violation of New York Penal Law 125.20.  Additionally, RUTLEDGE provided that same phone number when pursuing property/casualty claims connected to several automobile accidents over the past year.  Further, a review of subscriber records from T-Mobile confirmed that the phone number was subscribed to by RUTLEDGE in his own name and that it was active both before and after the armed robbery.

22.     As seen in the maps below that display the historical cell site data obtained pursuant to the warrant, MICHAEL RUTLEDGE's phone was in the vicinity of the Store during the armed robbery.  Approximately one and a half hours after the armed robbery, RUTLEDGE's phone was also near East 149th Street and Concord Avenue—the same time that RUTLEDGE was seen on surveillance video in that vicinity:



[1]     Law enforcement obtained these records pursuant to a search warrant signed by United States Magistrate Judge Vera M. Scanlon on March 14, 2023 under Miscellaneous Docket Number 23-MC-738.



23.    Law enforcement has also reviewed toll records for MICHAEL

RUTLEDGE's phone number—the same phone number for which law enforcement reviewed

historical cell site data.  Prior to the armed robbery on February 10, 2023, RUTLEDGE was in

contact with a certain phone number, 646-941-0241, (the "-0241 Number") five times between

8:59 p.m. and 9:33 p.m.—approximately two hours preceding the armed robbery.

24.    The -0241 Number is serviced by Verizon.  Subpoena returns from

TracFone, which is a reseller of wireless services and a subsidiary of Verizon, list the subscriber

address for the -0241 Number as 1041 Pugsley Avenue, Apartment 14G, Bronx, New York.  No

name is listed for the subscriber of the -0241 Number in the subpoena returns, however.

25.     Based on the historical cell site returns for MICHAEL RUTLEDGE's phone number, RUTLEDGE was in the vicinity of 1041 Pugsley Avenue prior to the armed robbery on February 10, 2023 at approximately 9:30 p.m., as shown in the image below:



26.     Further, the toll records for MICHAEL RUTLEDGE show that after RUTLEDGE was at 1041 Pugsley Avenue at approximately 9:33 p.m., there were no additional communications between RUTLEDGE and the -0241 Number before the armed robbery.  This pattern is consistent with RUTLEDGE picking up the user of the -0241 Number and the two of them being together for the next several hours for purposes of completing the armed robbery. Once they were in close physical proximity, there would be no reason for RUTLEDGE and the -0241 Number to communicate with one another by telephone.

27.     Based on the historical cell site returns for MICHAEL RUTLEDGE, RUTLEDGE returned to the vicinity of 1041 Pugsley Avenue on February 11, 2023 between approximately 12:50 a.m. and 12:57 a.m., as shown in the image below:



28.    MICHAEL RUTLEDGE's presence near 1041 Pugsley Avenue approximately one hour after the armed robbery is consistent with him dropping off one of the perpetrators at that location after completion of the armed robbery.

29.    In addition, 1041 Pugsley Avenue is approximately 3.4 miles from the vicinity of East 149th Street and Concord Avenue in the Bronx, where MICHAEL RUTLEDGE was observed on surveillance video and his historical cell site location data recorded him as being present at approximately 1:09 a.m. on February 11, 2023.  During those early morning hours, it would be feasible for RUTLEDGE to drive the distance between those locations in approximately 12 minutes.

30.    Law enforcement has also reviewed toll records for the -0241 Number. These toll records show that the -0241 Number did not place or receive any calls during the time when the robbery was in progress.  This pattern is consistent with the fact that, based on the

review of surveillance footage of the robbery and shooting, neither perpetrator appears to place or receive any calls during the robbery and shooting.

31.     Law enforcement has researched the residents of 1041 Pugsley Avenue to determine the user of the -0241 Number and the individual who MICHAEL RUTLEDGE likely picked up and dropped off from that location.

32.     ANGEL GOMEZ resides at 1041 Pugsley Avenue in Apartment 14B, which is on the same hallway as Apartment 14G, the registered address for the -0241 Number.

33.     Additionally, ANGEL GOMEZ and MICHAEL RUTLEDGE were previously incarcerated at the same facility.  In 2018, GOMEZ was sentenced to two years of incarceration after he was convicted of assault in the second degree with intent to cause serious physical injury.  While serving his sentence, GOMEZ was incarcerated at the Wallkill Correctional Facility.  MICHAEL RUTLEDGE was also an inmate at that same facility at the same time as GOMEZ while RUTLEDGE was serving his sentence for manslaughter in the first degree with intent to cause serious physical injury.

34.     Law enforcement has reviewed open-source information associated with what are believed to be ANGEL GOMEZ's social media accounts.  Law enforcement believes that GOMEZ uses the Instagram account "Childofalion__."  Law enforcement records indicate that GOMEZ was born on October 21, 1979.  On October 21, several followers of the "Childofalion__" account wished the user of that account a happy birthday.  Further, the individual who appears in photos posted to this account looks similar to photos of GOMEZ in law enforcement records.  In particular, GOMEZ has a unique tattoo on the ring finger of his left hand.  In his mug shot, GOMEZ displayed this tattoo, as seen in the photograph below.  A tattoo

on the ring finger of the left hand is also visible in posts by the user of the "Childofalion__"

Instagram account, as seen below:



35.      Multiple posts on the "Childofalion__" Instagram account reference that

the user of the account also maintains a TikTok account with the username "@NewYorkVillain."

TikTok is a social media platform on which users post short video clips.  The accountholder of

this TikTok account appears physically similar to photos of ANGEL GOMEZ in law

enforcement records.  Additionally, approximately four days before the armed robbery, on

February 6, 2023, GOMEZ posted a video on TikTok in which he is wearing dark blue or black

shoes with a white sole and white diagonal stripe, as seen below:



36.     In this excerpt of the TikTok video, ANGEL GOMEZ appears to be wearing sneakers consistent in appearance with the sneakers worn by the Shooter, as seen in the surveillance image excerpted below:



37.     In addition, law enforcement records reflect that ANGEL GOMEZ's height is approximately five foot, seven inches, which is consistent with the physical description provided by witnesses in the Store, and seen by law enforcement in surveillance footage, of the Shooter.  The Shooter was described as a short male of average build, similar to GOMEZ.

38.     Law enforcement has reviewed historical cell site data connected to the -0241 Number.[2]  While the historical cell site data obtained from Verizon for the -0241 Number is not as robust as the data obtained from T-Mobile for MICHAEL RUTLEDGE's phone

---

[2]     Law enforcement obtained these records pursuant to a search warrant signed by United States Magistrate Judge Ramon E. Reyes, Jr. on April 14, 2023 under Miscellaneous Docket Number 23-MC-1003.

number, the Verizon data for the -0241 number shows that GOMEZ and RUTLEDGE were in the same geographic vicinity at various points on the night of the armed robbery.

39.     At approximately 9:25 p.m. on February 10, 2023, both GOMEZ and RUTLEDGE's historical cell site data show that they were in the vicinity of 1041 Pugsley Avenue, as seen in the below image.



40.     Additionally, at 11:53 p.m., approximately 30 minutes after the armed robbery, both GOMEZ and RUTLEDGE were in the vicinity of Lower Manhattan, as shown in the image below.



41.      However, the historical cell site returns from Verizon for ANGEL GOMEZ's -0241 Number do not indicate where the phone connected with the -0241 Number was located at the precise time of the armed robbery.  Accordingly, this warrant application seeks additional location data for GOMEZ in connection with his Google account.

42.      Grand jury subpoena returns from Meta regarding the "Childofalion__" Instagram account show that GOMEZ provided Meta with a Google account, "agshowbizness@gmail.com," as his email address.

43.      Based on my training and experience, because Google applications have become so ubiquitous in smart phones, it is likely that the -0241 Phone had running in the background a Google application that obtains location data for the phone.

44.      Based on the foregoing, there is probable cause to believe that location data connected to the agshowbizness@gmail.com Google account for the period from February 9, 2023 at 12:00 a.m. Eastern to February 12, 2023 at 12:00 a.m. Eastern constitutes evidence of the SUBJECT OFFENSES and will assist law enforcement in confirming the locations of the user of the agshowbizness@gmail.com Google account, i.e., ANGEL GOMEZ.

**BACKGROUND RELATING TO GOOGLE AND RELEVANT TECHNOLOGY**

45.      In my training and experience, I have learned that Google is an Internet company which, among other things, provides electronic communication services to subscribers. Google allows subscribers to obtain email accounts at the domain name gmail.com.  Subscribers obtain an account by registering with Google.

46.      Of relevance to this application, I have learned that Google maintains the following records and information with respect to every Google account:

17

i.      <u>Subscriber and billing information.</u>  Google collects and maintains (typically unverified) identifying information about each subscriber, including, for example, name, username, address, telephone number, recovery and alternate email addresses, and sign-in phone numbers.  A recovery email address, which can be associated with more than one Gmail account, is used to regain access to an account if a password has been forgotten or a user has been locked out of their account. An alternate email address is a non-Gmail account that a user has provided that can be used to sign into a Gmail account. A sign-in phone number is a phone number that can be used as a primary/additional login identifier to access an account. Google also maintains records concerning the date on which the account was created, the Internet protocol ("IP") address[3] of the user at the time of account creation, the current status of the account (e.g., active or closed), the length of service, and the types of Google services utilized by the subscriber.  Finally, Google maintains records regarding (1) fetching and forwarding email addresses, which are email accounts from which the primary account receives emails and forwards emails, respectively; (2) email aliases, domain aliases or separate domains associated with the account, which are means by which accounts with other domain names or other email addresses can be associated with a

---

[3]      Based on my training and experience, each electronic device connected to the Internet must be assigned a unique IP address so that communications from or directed to that electronic device are routed properly.

primary Google account; (3) other Google accounts that have access to the primary account, which access can be granted by the user of the primary account; and (4) other email accounts that are associated with the primary Google account.

ii.      <u>Device Information.</u>  Google may also collect and maintain information identifying devices (including both computers and mobile devices) used to access accounts, including, for example, device serial number, a GUID or Global Unique Identifier, a phone number, MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI").

iii.      <u>Location History Data.</u>  Google collects and retains data about the location at which Google account services are accessed from any mobile device, as well as the periodic location of Android devices while they are in use.  This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device.  This location data may be associated with the Google account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for

19

their Google account, such as Location History or Web & App Activity tracking. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes it. Accounts created after June 2020 auto-delete Location History after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

47. Location data can assist investigators in understanding the chronological and geographic context of the account owner. This geographic and timeline information may tend to either inculpate or exculpate the account owner.

<u>AUTHORIZATION REQUEST</u>

48. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

49. I further request that the Court direct Google to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Google, which will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

50. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, in particular, but not limited to RUTLEDGE, GOMEZ, and the Robber, whose identity is, to date, unknown. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation,

including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.  If alerted to the existence of the warrant, there is reason to believe that the subjects under investigation will destroy that evidence and change their patterns of behavior.

51. Pursuant to 18 U.S.C. § 2705(b) and for the reasons stated above, it is further requested that the Court issue an Order commanding Apple not to notify any person (including subscribers or customers of the account(s) listed in the attached warrant) of the existence of the attached warrant for the period of one year from the date of the Order, except that Google may disclose the warrant to its respective attorney for the purpose of receiving legal advice.

Respectfully submitted,

Thomas A. Nuzio
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms, and
Explosives

Subscribed and sworn to before me by telephone on May ___5___, 2023

*Cheryl Pollak*

HONORABLE CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## **ATTACHMENT A**

*Property to Be Searched*

This warrant applies to information associated with the Google account identified by the email address agshowbizness@gmail.com (the "SUBJECT ACCOUNT") that is stored at premises controlled by Google LLC, a company that accepts service of legal process at 1600 Amphitheatre Parkway, Mountain View, California 94043.

**ATTACHMENT B**

*Particular Things to Be Seized*

I.    **Information to be Disclosed by Google LLC ("the Provider")**

   To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information for the account or identifier listed in Attachment A for the time period from February 9, 2023 at 12:00 a.m. Eastern Time to February 12, 2023 at 12:00 a.m. Eastern Time:

  a. <u>Subscriber and payment information.</u>  All subscriber and payment information regarding the SUBJECT ACCOUNT, including but not limited to name, username, address, telephone number, recovery and alternate email addresses, sign-in phone numbers, registration IP address, account creation date, account status, length of service, types of services utilized, means and source of payment, and payment history.

  b. <u>Location History.</u>  All location data whether derived from Global Position System (GPS) data, cell site / cell tower triangulation / trilateration, precision measurement information such as timing advance or per call measurement data and Wi-Fi location.  Such data shall include the GPS coordinates and dates and times of all locations and recordings.

  c. <u>Device Information.</u>  Any information identifying the device or devices used to access the Subject Accounts, including a device serial number, a GUID or Global Unique Identifier, a phone number, serial numbers, MAC addresses, Electronic

Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile

Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"),

Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services

Digital Network Number ("MSISDN"), International Mobile Subscriber

Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"), and

any other information regarding the types of devices used to access the Subject

Accounts.

d.  Information Regarding Linked Accounts, Including Accounts Linked by Cookie.
Any information identifying accounts that are associated with or connected to the

Subject Accounts, including but not limited to specifically by cookies; recovery,

secondary, forwarding, or alternate email address; Google ID; Android ID; IMEI;

creation IP address; telephone number, including SMS recovery number or sign-

in account number; or any other account or device identifier.

e.  Preserved or backup records.  Any preserved or backup copies of any of the
foregoing category of records, whether created in response to a preservation

request issued pursuant to 18 U.S.C. §2703(f) or otherwise.

## II.   Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits,

contraband, and instrumentalities of violations of 18 U.S.C. §§ 2, 924(c), and 1951(a) involving

MICHAEL RUTLEDGE and the user of the account or identifier listed in Attachment A during

the period from February 9, 2023 at 12:00 a.m. to February 12, 2023 at 12:00 a.m.

Law enforcement personnel (who may include, in addition to law enforcement

officers and agents, attorneys for the government, attorney support staff, agency personnel

2

assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

JRS
F. # 2023R00145

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: WARRANT TO GOOGLE LLC | **TO BE FILED UNDER SEAL**<br><br>**Application for Non-Disclosure Order Pursuant to 18 U.S.C. § 2705(b)**<br><br>No. 23-MC-1265 |

### APPLICATION FOR ORDER COMMANDING GOOGLE LLC NOT TO NOTIFY ANY PERSON OF THE EXISTENCE OF WARRANT

The United States requests that the Court order GOOGLE LLC not to notify any person (including the subscribers and customers of the account(s) listed in the warrant) of the existence of the warrant attached to the proposed Order submitted herewith for the period of one year from the date of the Order.

GOOGLE LLC is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Pursuant to 18 U.S.C. § 2703, the United States obtained the attached warrant, which requires GOOGLE LLC to disclose certain records and information to the United States.  This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order."  Id.

In this case, such an order would be appropriate because the attached warrant

relates to an ongoing criminal investigation, and this investigation is neither public nor known to the targets of the investigation, and there is reason to believe that its disclosure will alert the the targets to the ongoing investigation.  Specifically, the accounts listed in the warrant are being used by individuals who are targets of the investigation, who are at large and who do not yet know of the investigation.  Accordingly, there is reason to believe that notification of the existence of the attached warrant will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, or change patterns of behavior.  See 18 U.S.C. § 2705(b).  Some of the evidence in this investigation is stored electronically and can be completely and permanently erased.  Some of the evidence in this investigation involves communications that can be transferred to alternate platforms (including encrypted platforms and platforms beyond the jurisdictional reach of U.S. legal process).  If alerted to the existence of the subpoena, there is reason to believe that the the targets under investigation will destroy that evidence and change their patterns of behavior.

WHEREFORE, the United States respectfully requests that the Court grant the proposed Order directing GOOGLE LLC not to disclose the existence or content of the warrant attached to the proposed Order for the period of one year from the date of the Order, except that GOOGLE LLC may disclose the subpoena to an attorney for GOOGLE LLC for the purpose of receiving legal advice.

The United States further requests that the Court order that this application and any resulting order be sealed until further order of the Court.  As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Dated: Brooklyn, New York
      May 5, 2023

                    BREON PEACE
                    United States Attorney
                    Eastern District of New York

By:                    
                    James R. Simmons
                    Assistant U.S. Attorney
                    (718) 254-7511

JRS
F. # 2023R00145

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IN RE: WARRANT TO GOOGLE LLC          **TO BE FILED UNDER SEAL**

                                       No. 23-MC-1265

**<u>ORDER</u>**

The United States has submitted an application pursuant to 18 U.S.C. § 2705(b), requesting that the Court issue an Order commanding GOOGLE LLC, an electronic communication service provider and/or a remote computing service, not to notify any person (including the subscribers and customers of the accounts listed in the warrant) of the existence of the attached warrant for the period of one year from the date of this Order.

The Court determines that there is reason to believe that notification of the existence of the attached warrant will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, or change patterns of behavior.  <u>See</u> 18 U.S.C. § 2705(b).

IT IS THEREFORE ORDERED under 18 U.S.C. § 2705(b) that GOOGLE LLC shall not disclose the existence of the attached warrant, or this Order of the Court, to the listed subscribers or to any other person for the period of one year from the date of this Order, except that GOOGLE LLC may disclose the attached warrant to an attorney for GOOGLE LLC for the purpose of receiving legal advice.

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise ordered by the Court.

Dated: Brooklyn, New York
       May ___5___, 2023


*Cheryl Pollak*

_____
HONORABLE CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK